**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN THE MATTER OF THE  : 
EXTRADITION OF   :  MAGISTRATE NO. 08-1112M
ROBERT GORDON   :

**Memorandum and Opinion**

L. FELIPE RESTREPO  NOVEMBER 19, 2010
UNITED STATES MAGISTRATE JUDGE

**I. Factual Background**[1]

On February 18, 2008, a Justice of the Peace at the South and South East Hampshire Magistrates Court in Great Britain issued a warrant for the arrest of Robert Gordon, a native of the United Kingdom and a United States citizen residing in Philadelphia, Pennsylvania. The British Magistrates Court charged Mr. Gordon with indecent assault, gross indecency with a child, and inciting a child to commit gross indecency, for acts Mr. Gordon allegedly committed between March 27, 1973 and March 28, 1977.

The Government of the United Kingdom of Great Britain and Northern Ireland subsequently sought Mr. Gordon's extradition pursuant to its extradition treaty with the United States and to federal legislation implementing such treaties. Extradition Treaty Between the

---

[1] Unless otherwise noted, the facts as detailed are excerpted from the Government's Memorandum Addressing Whether the Court Has Jurisdiction (Doc. No. 18) (hereinafter "Government's Memo") and Petitioner's Reply thereto (Doc. No. 21) (hereinafter "Petitioner's Reply") and are not in dispute.

1

Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., March 31, 2003, S. Treaty Doc. No. 108-23 (2004) (hereinafter "Extradition Treaty"); 18 U.S.C. § 3184 *et seq.* On August 19, 2008, the United States government prepared an extradition complaint on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland. The same day, the United States Magistrate Judge Timothy R. Rice issued a warrant for Mr. Gordon's arrest; Mr. Gordon was arrested and detained on August 20, 2008.

On August 22, 2008, Mr. Gordon appeared before Judge Rice, represented by attorney Margaret M. Grasso. During his appearance that day, Mr. Gordon signed an Affidavit of Waiver of Extradition (Doc. No. 8), waiving his rights under the Extradition Treaty and agreeing to be transported in custody to the United Kingdom. In the Affidavit of Waiver of Extradition, Mr. Gordon:

(1) conceded that he was the individual against whom charges were pending in the United Kingdom and for whom process was outstanding in the United Kingdom;

(2) averred that he fully understood that, in the absence of signing a waiver of his rights, he could not be compelled to return to the United Kingdom unless and until a court in the United States issued a ruling certifying his extraditability and the Secretary of State of the United States ordered his extradition by issuing a warrant of surrender;

(3) averred that he reviewed the complaint and fully understood his right to a hearing during which he and his counsel could challenge the extradition request;

(4) averred that he understood that, pursuant to Title 18, United States Code, Section 3184, he was entitled to a hearing at which certain facts would need to be established, including

that probable cause existed to believe that he committed the offenses for which extradition was requested; and

      (5) waived his rights under the extradition treaty and agreed to be transported in custody to the United Kingdom.

(Aff. of Waiver Extradition, Doc. No. 8).

On September 12, 2008, Mr. Gordon surrendered to the custody of British police in Philadelphia, Pennsylvania, and was transported to the United Kingdom on a flight that same day. After a trial on the merits in the United Kingdom in December 2008, Mr. Gordon was acquitted on all counts.

Mr. Gordon filed a Petition for Expungement (Doc. No. 16) on March 9, 2010, requesting an order expunging all records pertaining to his arrest and extradition. In the Petition, Mr. Gordon argues that his U.S. criminal record of arrest and extradition has caused him great hardship and embarrassment in the United States, despite his acquittal. (Pet. for Expungement at 6, 7.) Specifically, he notes that (A) he was acquitted of all criminal charges; (B) the nature of the charges is abhorrent to society, humiliating, and "severely blemish[es] his character"; (C) the charges were likely fabricated as an act of vengeance; (D) the charges led to extreme hardship, uncertainty, and humiliation; (E) the charges led to uncertainties in Petitioner's naturalization process for United States citizenship; and (F) the charges continue to cause Petitioner anxiety whenever his criminal record must be checked for employment, housing, education or other purposes. (Id.) Due to these compelling circumstances, he argues, the Court should grant his Petition and expunge his criminal record. (Id. at 6.)

On August 23, 2010, this Court ordered the parties to brief the issue of whether a federal court in this Circuit has jurisdiction to consider Mr. Gordon's Petition for Expungement. (Doc. No. 17). For the reasons that follow, the Petition for Expungement is dismissed for lack of jurisdiction.

**II. Discussion**

In the Third Circuit, a federal court may exercise its ancillary jurisdiction to address a Petition for Expungement of an individual's criminal record. See United States v. Dunegan, 251 F.3d 477, 478-79 (3d Cir. 2001); United States v. Noonan, 906 F.2d 952, 956 (3d Cir. 1990).[2] But a court has jurisdiction over petitions for expungement in narrow circumstances: only where the "predicate for the expunction is a challenge to the validity of either the arrest or conviction." Noonan, 906 F.3d at 957; see also United States v. Rowlands, 451 F.3d 173, 178 (3d Cir. 2006); Dunegan, 251 F.3d at 480; United States v. Jackson, 2010 U.S. Dist. LEXIS 14651, at *1-2 (D. N.J. Feb. 18, 2010); United States v. Glanton, 2009 U.S. Dist. LEXIS 93207, at *2 (W.D. Pa. Oct. 6, 2009).

A petitioner's acquittal of relevant criminal charges, even when accompanied by compelling equitable arguments, will not serve as a sufficient basis, in this Circuit, for a federal court's jurisdiction over a Petition for Expungement. In United States v. Dunegan, petitioner Dennis Dunegan was indicted in the Western District of Pennsylvania in 1972 for violating a

---

[2] A federal court may invoke ancillary jurisdiction as an "incident to a matter where it has acquired jurisdiction of a case in its entirety and, as an incident to the disposition of the primary matter properly before it." Dunegan, 251 F.3d at 479.

suspect's civil rights. 251 F.3d at 478. Mr. Dunegan was tried and ultimately acquitted by a criminal jury. Id. In December 2000, Mr. Dunegan filed a petition for expungement of his criminal record.

In his Petition for Expungement, Mr. Dunegan did not allege unlawful arrest or any other challenge to the legality of the criminal proceedings against him. Id. at 480. Instead, his petition stated only that his criminal record was likely to interfere with employment opportunities in the future. Brief for Appellant at 3, United States v. Dunegan, 251 F.3d 477 (3d Cir. 2001). The Court concluded that "[i]n the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were *invalid or illegal*, a District Court does not have jurisdiction to expunge a criminal record, even when ending in acquittal." Dunegan, 251 F.3d at 480 (emphasis added). Thus, the case was remanded to the District Court with direction to dismiss the petition for lack of subject matter jurisdiction. Id. at 480.

The Third Circuit reinforced its holding in Dunegan when it revisited the issue of expunction of criminal records in United States v. Rowlands, 451 F.3d 173 (3d Cir. 2006). Petitioner Rowlands sought expungement of his criminal record – an indictment and conviction by jury of numerous offenses, including extortion – in order to gain re-certification as a teacher. Id. at 175-76. In affirming the District Court's dismissal of Mr. Rowland's petition for want of jurisdiction, the Court of Appeals held that a federal court has jurisdiction over expungement petitions "*only* when the validity of the underlying criminal proceeding is challenged." Id. at 178 (emphasis added).

Mr. Gordon argues that his appearance before Judge Rice, during which he waived his right to contest extradition, was *not* the "underlying criminal proceeding" that he was required to

5

challenge under Rowlands in order for the Court to have jurisdiction over his expungement petition. (Pet'r Reply at 6.) Rather, Mr. Gordon states that the "underlying criminal proceedings" in his case were the criminal charges in Great Britain. He argues that by waiving extradition, reporting for trial, and putting on a case contesting the charges at trial, he has "challenged" the underlying criminal proceedings. (Id.) But this type of "challenge" is not the type upon which jurisdiction over an expungement petition can be based.

The Third Circuit has made clear in Rowlands, Dunegan, and Noonan that the "challenge" to underlying criminal proceedings required of a petitioner for a court to have jurisdiction is a *legal* one. In other words, the disputing of *factual* allegations by the accused at criminal trial is not the type of "challenge" contemplated by the Circuit; there must be an argument by the petitioner that the proceedings themselves were *legally* infirm or invalid. Indeed, in Dunegan there was no jurisdiction over the petitioner's expungement request – even though he presented at trial, contested the criminal charges against him, and was ultimately acquitted – because he did not challenge the legality of his arrest or indictment. In the extradition context, a petitioner may challenge the legality of his or her arrest and related extradition proceedings by arguing that the charges upon which the arrest and potential extradition are based are not supported by probable cause.

In signing the Affidavit of Waiver of Extradition, Mr. Gordon expressly waived his rights to contest extradition. Therefore, he waived his right to challenge the U.S. government's assertion – on behalf of the government of the United Kingdom – that his arrest was supported by

probable cause.³  (Aff. of Waiver Extradition, Doc. No. 8.)  Further, Mr. Gordon has not put forth in his Petition for Expungement that his arrest or extradition was legally infirm in any way.  Nowhere in the Petition, in fact, did Mr. Gordon allege that *any* of the legal proceedings against him in the United States or the United Kingdom were invalid or illegal.  (Pet. for Expungement).  Mr. Gordon has instead grounded his Petition on equitable considerations that he argues, when coupled with his ultimate acquittal, are "unusually compelling" enough to warrant the Court's exercise of jurisdiction over his Petition.  (Pet. for Expungement at 6, 7.)

**III.  Conclusion**

In short, Mr. Gordon has not challenged the *legality* of the criminal proceedings against him, the record of which he seeks to expunge.  As such a challenge is required under United States v. Rowlands for a federal court in this Circuit to have jurisdiction over a Petition for Expungement, Mr. Gordon's Petition must be **DISMISSED** for want of jurisdiction.  An implementing order follows.

---

³Pursuant to the extradition treaty in place between the United States and the United Kingdom and implementing legislation, an individual residing in the United States, against whom criminal charges have been filed in the United Kingdom, is entitled to a hearing before a United States judge or magistrate judge.  18 U.S.C. § 3184 *et seq.*; Extradition Treaty.  This proceeding takes the form of a preliminary hearing; it is not a full trial to determine the guilt or innocence of the accused.  Rather, the purpose of the hearing is to determine whether there is probable cause to support the criminal charge against the accused and therefore, whether the crime is extraditable under the Extradition Treaty.  18 U.S.C. § 3184 *et seq.*; Collins v. Loisel, 259 U.S. 309 (1922); see also Extradition Treaty.  Accordingly, should an accused contest the validity of his arrest and indictment by the United Kingdom, the United States – on behalf of the United Kingdom – would be required to produce sufficient evidence to warrant holding the accused for trial.  18 U.S.C. § 3184.  Article 17 of the Extradition Treaty provides for the expeditious surrendering of the accused without further proceedings if the accused chooses to waive extradition and thus declines to contest the validity of his arrest.  Extradition Treaty art. 17, at 12.